IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | | |
|---|---|---|
| JACQUELYN SUE VIOLETTE, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Case No. 07-6074-KI |
| | ) | |
| vs. | ) | OPINION AND ORDER |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) | |
| | ) | |
| Defendant. | ) ) | |

Martin J. McKeown
Andrea K. Knight
Julianna C. Coons
P. O. Box 11650
Eugene, Oregon 97440

    Attorneys for Plaintiff

Karin J. Immergut
United States Attorney
District of Oregon

Page 1 - OPINION AND ORDER

Britannia I. Hobbs
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon  97204-2902

Joanne E. Dantonio
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, Washington  98104-7075

      Attorneys for Defendant

KING, Judge:

Plaintiff Jacquelyn Sue Violette brings this action pursuant to section 405(g) of the Social Security Act to obtain judicial review of a final decision of the Commissioner denying her application for disability insurance benefits ("DIB").  I affirm the decision of the Commissioner.

## BACKGROUND

Plaintiff filed an application for DIB on February 7, 2005, alleging disability beginning January 1, 2004.  The application was denied initially and upon reconsideration.  After a timely request for a hearing, plaintiff, represented by counsel, appeared before an Administrative Law Judge ("ALJ").  On October 27, 2006, the ALJ issued a decision finding that plaintiff was not disabled within the meaning of the Act and therefore not entitled to benefits.  This decision became the final decision of the Commissioner when the Appeals Council declined to review the decision of the ALJ on February 23, 2007.

## LEGAL STANDARDS

The Social Security Act (the "Act") provides for payment of DIB to people who have contributed to the Social Security program and who suffer from a physical or mental disability.

Page 2 - OPINION AND ORDER

42 U.S.C. § 423(a)(1). In addition, under the Act, supplemental security income benefits ("SSI") may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act. 42 U.S.C. § 1382(a).

The burden of proof to establish a disability rests upon the claimant. Gomez v. Chater, 74 F.3d 967, 970 (9th Cir.), cert. denied, 519 U.S. 881 (1996) (DIB); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992) (SSI). To meet this burden, the claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability. 20 C.F.R. §§ 404.1520 and 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1996) (DIB); Quang Van Han v. Bowen, 882 F.2d 1453, 1456 (9th Cir. 1989) (SSI). First, the Commissioner determines whether the claimant is engaged in "substantial gainful activity." If the claimant is engaged in such activity, disability benefits are denied. Otherwise, the Commissioner proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c) and 416.920(c). If the

Page 3 - OPINION AND ORDER

claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(d) and 416.920(d).  If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.  If the impairment is not one that is presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past.  If the claimant is able to perform work which he or she performed in the past, a finding of "not disabled" is made and disability benefits are denied.  20 C.F.R. §§ 404.1520(e) and 416.920(e).

If the claimant is unable to perform work performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his or her age, education, and work experience.  The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. Distasio v. Shalala, 47 F.3d 348, 349 (9th Cir. 1995) (DIB); Drouin, 966 F.2d at 1257 (SSI).  The claimant is entitled to disability benefits only if he is not able to perform other work.  20 C.F.R. §§ 404.1520(f) and 416.920(f).

When an individual seeks either DIB or SSI because of disability, judicial review of the Commissioner's decision is guided by the same standards.  42 U.S.C. §§ 405(g) and 1383(c)(3). This court must review the case to see if the decision of the Commissioner is supported by

substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable person might accept as adequate to support a conclusion. Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). It is more than a scintilla, but less than a preponderance, of the evidence. Id.

Even if the Commissioner's decision is supported by substantial evidence, it must be set aside if the proper legal standards were not applied in weighing the evidence and in making the decision. Id. The court must weigh both the evidence that supports and detracts from the Commissioner's decision. Id. The trier of fact, and not the reviewing court, must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the Commissioner. Id. at 720-21.

## FACTS

I.    Violette's History

On her date last insured, Violette was 48 years old, with a high school education. She suffered from moderately severe degenerative disk disease, critical central canal stenosis, spondylolisthesis, and an annular fissure, revealed by an MRI in June of 2005. She experienced back pain with radiating pain in both legs. On June 24, 2005, Violette underwent a decompressive laminotomy. As a result of the surgery, she no longer feels the radiating pain in her legs, but she continues to experience pain in her lower back.

Violette has also been diagnosed with chronic obstructive pulmonary disease (COPD) and, as a result, cannot overexert herself or tolerate dust, smoke, and fumes. She complains of pain in her left hand and thumb from arthritis, and depression.

Violette has worked as a delicatessen driver, a carnival ride operator, a flagger, a landscape laborer, and a service station attendant. She claimed to have last worked in June 2004, when she asked to be laid off because her husband believed it was no longer financially beneficial for her to work. She admitted to working as a flagger/driver for oversized loads in February 2006, after her date last insured and after her alleged onset date.

II.     The ALJ's Decision

The ALJ found that plaintiff had a physical impairment considered severe within the meaning of 20 C.F.R. § 404.1520(b)–lumbar degenerative disc disease. However, the ALJ did not find that this impairment met or medically equaled the requirements of any of the impairments listed in Appendix 1, Subpart P of the Social Security Regulations. In addition, the ALJ found that Violette's allegations regarding her limitations were not totally credible.

The ALJ determined that plaintiff could perform some range of medium or light work. Specifically, the ALJ found that Violette had the residual functional capacity to lift and carry 20 to 50 pounds occasionally and 11 to 20 pounds frequently. She could stand for four hours in an eight-hour day, and sit for eight hours in an eight-hour day. She needed a sit/stand option to allow her to change positions when necessary to alleviate back pain. She could not crawl. She could only bend, squat and climb occasionally. She could not be exposed to hazardous conditions because she took narcotic pain medication, and due to back pain she would miss one day of work per month or leave early one day per month.

Based on this residual functional capacity, and the testimony of the vocational expert ("VE"), the ALJ concluded that Violette could not perform any past relevant work. However, the ALJ found Violette could do the following work: order clerk– food and beverage, charge

account clerk, and sorter. Accordingly, the ALJ found that plaintiff was not under a "disability" within the meaning of the Social Security Act, at any time through her date last insured.

## DISCUSSION

I.    <u>Listing Determination</u>

Violette complains that the ALJ improperly concluded that her impairment did not meet or equal Listing 1.04(C).[1]

The listings set out at 20 CFR pt. 404, subpt. P, App. 1 are "descriptions of various physical and mental illnesses and abnormalities, most of which are categorized by the body system they affect." <u>Sullivan v. Zebley</u>, 493 U.S. 521, 529-30 (1990). For a claimant to show that his impairment matches one of those listed, the impairment must meet all of the specified medical criteria. <u>Id.</u> at 530.

Alternatively, a claimant may show that his unlisted impairment, or combination of impairments, is "equivalent" to a listed impairment, but to do so he must present medical findings equal in severity to all the criteria for the one most similar listed impairment. <u>Id.</u> at 531. Equivalence is determined on the basis of a comparison between the "symptoms, signs and laboratory findings" about the claimant's impairment as evidenced by the medical records "with the medical criteria shown with the listed impairment." 20 C.F.R. § 404.1526. A finding of equivalence must be based on medical evidence only. 20 CFR §§ 404.1529(d)(3), 416.929(d)(3); <u>Lewis v. Apfel</u>, 236 F3d 503, 514 (9th Cir 2001).

---

[1] Listing 1.04(C) requires:
C.    Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

Page 7 - OPINION AND ORDER

If a claimant's impairment matches or is equivalent to a listed impairment, he is presumed unable to work and is awarded benefits without a determination whether he can actually perform prior work or other work. Zebley, 493 U.S. at 532. The claimant bears the burden of proving that he has an impairment that meets or equals the criteria of an impairment listed in Appendix 1 of the Commissioner's regulations. Burch v. Barnhart, 400 F.3d 676, 683 (9th Cir. 2005).

Violette's impairment did not meet Listing 1.04(C) since her pain was nonradicular and her symptoms did not limit her ability to "ambulate effectively."[2] Violette clarifies in her Reply that "no singular, particular, affliction . . . meets a listing," but she contends her combination of impairments–severe spinal stenosis, degenerative disc disease, spondylolisthesis, COPD, arthritis, chronic pain and depression–meet or equal a listing, without specifying which one. Reply at 3. The ALJ concluded, after reviewing the medical evidence, that "no treating or

---

[2]Listing 1.00B2b defines "ambulate effectively" to mean:

> To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as hopping and banking and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

Page 8 - OPINION AND ORDER

examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment." Tr. 21. The ALJ noted that plaintiff could ambulate effectively after her surgery.

Violette does not point to any medical evidence establishing that her combination of impairments is equivalent to a listed impairment. See Zebley, 493 U.S. at 531. She claims that no doctor has been asked to consider all of her impairments together, but it is Violette's burden to demonstrate that her impairments are equivalent to a listing. See Burch, 400 F.3d at 683. Indeed, Violette can point to no diagnosis of arthritis or depression prior to her date last insured. The earliest date she sought treatment for depression was March 2006, five months after her date last-insured. Similarly, the earliest date she sought treatment for pain in her left hand was in March or April of 2006. Accordingly, the ALJ did not err in determining that Violette's impairments did not meet or equal Listing 1.04(C), or any other listing.

II.  Credibility Determination

Violette contends that the ALJ improperly relied on Violette's ability to engage in an array of life activities in rejecting Violette's testimony of disabling pain. The Commissioner argues that the ALJ's credibility assessment is supported by substantial evidence, noting that her testimony was inconsistent with regard to her work history and onset date of disability, that she was capable of performing household chores and hobbies, and that she did not seek treatment for any depression she may have experienced until five months after her date last insured.

When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-stage analysis. In the first stage, the claimant must (1) produce objective medical evidence of one or more impairments; and (2) show that the impairment or combination of impairments could reasonably be expected to produce some degree of symptom.

Page 9 - OPINION AND ORDER

Smolen v. Chater, 80 F.3d 1273,1281-82 (9th Cir. 1996). The claimant is not required to produce objective medical evidence of the symptom itself, the severity of the symptom, or the causal relationship between the medically determinable impairment and the symptom. The claimant is also not required to show that the impairment could reasonably be expected to cause the severity of the symptom, but only to show that it could reasonably have caused some degree of the symptom. Id. at 1282.

In the second stage of the analysis, the ALJ must assess the credibility of the claimant's testimony regarding the severity of the symptoms. If there is no affirmative evidence of malingering, the ALJ may reject the claimant's testimony only if the ALJ makes specific findings stating clear and convincing reasons for the rejection, including which testimony is not credible and what facts in the record lead to that conclusion. Id. at 1284. Clear and convincing reasons for discrediting a claimant's testimony include consideration of inconsistencies between testimony and conduct, daily activities, type and dosage of medication, failure to seek treatment or to follow prescribed treatment, and reports to physicians. 20 C.F.R. 404.1529; see also, Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991).

Violette produced medical evidence of an underlying impairment consistent with her complaints of back pain and there is no evidence that she is malingering. Therefore, the ALJ must provide clear and convincing reasons for rejecting Violette's testimony.

The ALJ noted a number of discrepancies between Violette's testimony about her abilities and her activities. She performed all the household chores, including dusting, vacuuming, laundry, baking and cooking, went grocery shopping every one to two weeks, worked in her garden, drove, and estimated she could lift up to 15 to 20 pounds occasionally.

Page 10 - OPINION AND ORDER

The ALJ properly considered these daily activities in evaluating Violette's testimony. See Morgan v. Apfel, 169 F.3d 595, 600 (9th Cir. 1999) (claimant's ability to fix meals, do laundry, work in yard, and occasionally care for friend's child is evidence of ability to work).

Additionally, the ALJ properly considered plaintiff's work history during the relevant period. Violette stopped her last substantial gainful activity in January 2004, not because of her condition, but because her part-time pay was not worth the cost to travel to the job. She asked to be laid off. Additionally, initially Violette identified January 1, 2004 as her onset date, yet she later testified June or July of 2004 was the date of onset of disability. She also admitted that she worked for three months as an escort driver for oversized loads in February 2006, after her onset date. These are relevant factors in determining whether to accept plaintiff's complaints about the severity of her condition.

Finally, Violette did not seek any treatment for depression until May 2006, well after her alleged onset date and five months after her date last insured. Lack of treatment for mental problems can inform the credibility determination. Burch, 400 F.3d at 681. Furthermore, Violette identifies no limitations on her functioning as a result of depression. Violette also did not seek treatment for her hand impairment. She provides no medical evidence of any diagnosis of arthritis, and she admits she was not diagnosed until March or April 2006, again well after her date last insured.

The ALJ's clear and convincing credibility findings are supported by substantial evidence, only one component of which is her ability to perform household chores and hobbies. As a result, I do not find error in the ALJ's decision to accept Violette's complaints of pain only to the extent they are consistent with the residual functional capacity determination.

Page 11 - OPINION AND ORDER

III.      <u>Residual Functional Capacity</u>

Plaintiff argues that the ALJ's residual functional capacity did not account for her arthritis in her left hand and her depression.

For the reasons stated above, the evidence supports the ALJ's conclusion that plaintiff's arthritis and depression did not affect plaintiff's residual functional capacity. The ALJ may exclude from the RFC any limitations not supported by substantial evidence in the record. <u>See</u> <u>Bayliss v. Barnhart</u>, 427 F.3d 1211, 1217-18 (9th Cir. 2005); <u>Magallanes v. Bowen</u>, 881 F.2d 747, 756 (9th Cir. 1989) (VE's opinion has no value if the assumptions in the hypothetical are not supported by medical evidence in the record). Symptoms alone are not enough to establish a medically determinable impairment. <u>Ukolov v. Barnhart</u>, 420 F.3d 1002, 1005 (9th Cir. 2005). Additionally, as the ALJ noted, there is no indication from her doctors that she is unable to do light work with a sit/stand option.

In sum, the ALJ did not err in arriving at the residual functional capacity determination.

IV.      <u>Perform Other Work</u>

The ALJ found that Violette could perform other work existing in significant numbers in the national economy. Violette asserts that the ALJ neglected to include her need to miss work 1-2 days on average per month, environmental restrictions due to COPD, limitations due to arthritis in her left hand, and mental limitations due to depression, pain medication and lack of sleep.

The Commissioner has the burden in step five, and can satisfy this burden by eliciting the testimony of a VE with a hypothetical question that sets forth all the limitations of the claimant.

Page 12 - OPINION AND ORDER

Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995).  The assumptions in the hypothetical question must be supported by substantial evidence.  Id.

The opinion of the VE cannot be relied upon if the vocational hypothetical asked by the ALJ is not supported by the record.  Embrey v. Bowen, 849 F.2d 418, 423 (9th Cir. 1988).  When the vocational hypothetical does not reflect all of the claimant's limitations, the "expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy."  DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991) (citations omitted).

As set forth above, because the ALJ gave clear and convincing reasons for rejecting Violette's claims of arthritis and depression, and the ALJ's vocational hypothetical contained all of the applicable limitations.  The ALJ included Violette's need to sit and stand, and environmental limitations due to the COPD.  Since the range of sedentary work was not significantly eroded by these two limitations, the VE's testimony constitutes substantial evidence on which to base a denial of benefits.

## CONCLUSION

The decision is affirmed.

Dated this    9th    day of January, 2008.

                                          /s/ Garr M. King
                                         Garr M. King
                                         United States District Judge